UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GERALD T. PATTERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:07-CV-1601-G |
| SIERRA PACIFIC MORTGAGE | ) | |
| COMPANY, INC., ET AL., | ) | **ECF** |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are the motions (1) of the defendants Sierra Pacific Mortgage Company, Inc. ("Sierra") and Fremont Investment & Loan ("Fremont") (collectively, "the defendants") to dismiss the claims of the plaintiff Gerald T. Patterson ("Patterson") for failure to state a claim upon which relief can be granted; and (2) Sierra's motion to dismiss for lack of subject matter jurisdiction. For the reasons set forth below, Sierra's motion to dismiss for lack of subject matter jurisdiction and Fremont's motion to dismiss Patterson's claims for failure to state a claim are granted.

## I. BACKGROUND

Sierra is a whole mortgage lender headquartered in California. Declaration of Felecia A. Bowers in Support of Motion to Dismiss ("Bowers Declaration") ¶ 3, *attached to* Appendix to Defendant Sierra Pacific Mortgage Company's Brief in Support of its Motion to Dismiss ("Sierra Appendix") as Exhibit 2.

On January 31, 2006, Fremont issued Patterson purchase money loans in the amounts of $536,000 and $134,000. Defendant Fremont Investment & Loan's Brief in Support of its Motion to Dismiss ("Fremont Motion") at 1.

On October 10, 2006, Sierra issued a $500,000 purchase money loan ("Sierra Loan") to Patterson secured by improved real property located at 2915 Reagan Street, Dallas, Texas, 75219. Bowers Declaration ¶ 4. The Sierra Loan was divided into first- and second-lien promissory notes, loan number 422593 ("Loan 422593") in the principal amount of $400,000 and loan number 423197 ("Loan 423197") in the principal amount of $100,000. *Id*.

By letter dated November 6, 2006, Sierra informed Patterson that Loan 422593 had been transferred to Countrywide Home Loans, Inc. ("Countrywide"). Letter from Sierra to Patterson dated November 6, 2006, *attached to* Sierra Appendix as Exhibit 4. The letter advised Patterson that "[t]he servicing of your mortgage loan -- that is, the right to collect payments from you -- is being transferred . . . ." *Id.* By letter dated November 10, 2006, Sierra informed Patterson that Loan 423197 had

been transferred to Homecomings Financial Network ("Homecomings"). Letter from Sierra to Patterson dated November 10, 2006, *attached to* Sierra Appendix as Exhibit 5. Thus, Countrywide and Homecomings assumed the right to collect payments and responsibility for servicing Loan 422593 and Loan 423197 respectively. Bowers Declaration ¶¶ 5, 6. As a result, Sierra asserts that it retains no financial interest in payments of principal or interest due under the notes evidencing those loans, or servicing responsibility for Loan 422593 and Loan 423197. *Id*.

On September 18, 2007, proceeding *pro se*, Patterson filed his complaint, alleging numerous violations of federal and state law. It appears that the complaint is based on accusations that the defendants deposited Patterson's promissory notes into their own accounts without his permission, "created" money from the use of his promissory notes, and lent Patterson's own money back to him in the form of a loan. *See* Complaint ¶¶ 9, 29, 33, 48. Patterson asserts that the defendants' actions violated regulations governing insured depository institutions, 12 U.S.C. § 1828(g)(2); the Truth in Lending Act ("TILA"), 15 U.S.C. § 1600 *et seq.*; the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692; and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. *See generally* Complaint. Patterson also alleges numerous state law claims, including breach of contract, lack of consideration, fraud in the inducement, promissory estoppel, breach of an implied covenant of good faith and fair dealing, breach of fiduciary duty, lack of agency,

deceptive trade practices, negligent misrepresentation, assumpsit for money had and received, conversion, usury, recission, unjust enrichment, and civil conspiracy. *Id*. Patterson also seeks costs and attorney's fees. *Id.* ¶ 94.

Sierra and Fremont move to dismiss Patterson's claims, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. Sierra, moving to dismiss under Federal Rule of Civil Procedure 12(b)(1), also asserts that it is not a proper defendant in the action and thus Patterson lacks standing. Sierra Motion at 3-4. Patterson has not responded to the motions.

## II. ANALYSIS

### A. Motion to Dismiss Pursuant to Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes the dismissal of a case for lack of jurisdiction over the subject matter. *See* FED. R. CIV. P. 12(b)(1). A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction must be considered by the court before any other challenge because "the court must find jurisdiction before determining the validity of a claim." *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (internal citation omitted); see also *Ruhrgas AG v. Marathon Oil Company*, 526 U.S. 574, 577 (1999) ("The requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception") (citation and internal quotation marks omitted). On a Rule 12(b)(1) motion, which "concerns the court's 'very power to hear the case . . . [,] the trial court

is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *MDPhysicians & Associates, Inc. v. State Board of Insurance*, 957 F.2d 178, 181 (5th Cir.) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981)), *cert. denied*, 506 U.S. 861 (1992). In ruling on a motion to dismiss under Rule 12(b)(1), the court may rely on: "1) the complaint alone; 2) the complaint supplemented by undisputed facts; or 3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts." *MCG, Inc. v. Great Western Energy Corporation*, 896 F.2d 170, 176 (5th Cir. 1990) (citing *Williamson*, 645 F.2d at 413).

The standard for reviewing a motion under Rule 12(b)(1), however, depends on whether the defendant make a facial or factual attack on the plaintiff's complaint. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). The defendants make a facial attack by the mere filing of a Rule 12(b)(1) motion. *Id.* In that case, the trial court must look at the sufficiency of the allegations in the complaint, which are presumed to be true. *Id.* The defendants make a factual attack, on the other hand, by providing affidavits, testimony, or other evidentiary materials challenging the jurisdiction of the court. *Id.* In a factual attack, the plaintiffs are also required to submit facts in support of jurisdiction and have the burden of proving, by a preponderance of the evidence, that the trial court has subject matter jurisdiction over

the claims.  *Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986).

Importantly, lack of Article III standing is a defect in subject matter jurisdiction.  See *Bender v. Williamsport Area School District*, 475 U.S. 534, 541-42 (1986); *O'Shea v. Littleton*, 414 U.S. 488, 493-95 (1974).  Therefore, when a plaintiff lacks standing to sue in federal court, it is appropriate for the court to dismiss the action, pursuant to Rule 12(b)(1), for want of subject matter jurisdiction.  See *Chair King, Inc. v. Houston Cellular Corporation*, 131 F.3d 507, 509 (5th Cir. 1997); *Bender*, 475 U.S. at 541.

In the instant motion, Sierra has presented the court with a factual attack on Patterson's complaint, pursuant to Rule 12(b)(1), because it has submitted evidentiary materials in support of its motion, asserting that Patterson lacks standing because Patterson and Sierra are not in privity.  Sierra Motion at 4.  Although nearly nine months have gone by since Sierra's factual attack on Patterson's complaint was made, Patterson has failed to submit facts showing that he has standing to pursue these claims against Sierra.  Because Patterson has the burden of proving, by a preponderance of the evidence, that this court has subject matter jurisdiction over his claims and has not done so, the court finds that Patterson has not met the requirements for Article III standing.  Accordingly, Sierra's motion to dismiss Patterson's claims is granted.

### B. Motion to Dismiss Pursuant to Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). There are two primary principles that guide the court's determination of whether dismissal under Rule 12(b)(6) should be granted. First, a motion under Rule 12(b)(6) should be granted only if it appears beyond doubt that the nonmovant could prove no set of facts in support of his claims that would entitle him to relief. *Conley v. Gibson*, 335 U.S. 41, 45-46 (1957); *Leffall v. Dallas Independent School District*, 28 F.3d 521, 524 (5th Cir. 1994); see also *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1357 at 598 (1969), for the proposition that "the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted"), *cert. denied*, 459 U.S. 1105 (1983). Second, the court must accept all well-pleaded facts as true and view them in the light most favorable to the nonmovant. See *Capital Parks, Inc. v. Southeastern Advertising and Sales System, Inc.*, 30 F.3d 627, 629 (5th Cir. 1994); *Norman v. Apache Corporation*, 19 F.3d 1017, 1021 (5th Cir. 1994); *Chrissy F. by Medley v. Mississippi Department of Public Welfare*, 925 F.2d 844, 846 (5th Cir. 1991). However, conclusory allegations and unwarranted factual deductions will not suffice to prevent a motion to dismiss. *United States ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003).

1. Federal Law Claims

a. *Violations of Regulations Governing Insured Deposit Institutions*

Patterson asserts that the defendants violated regulations governing insured deposit institutions under 12 U.S.C. § 1828(g)(2). Complaint ¶¶ 7-11. Specifically, Patterson alleges that the defendants deposited his promissory notes into their accounts and lent "credit back to [Patterson] in the form of a loan" without his written permission. *Id*. ¶ 9.

Under 12 U.S.C. § 1828(g)(1),

> [w]henever it shall appear to the Board of Directors that any *noninsured bank or any affiliate* thereof is engaged or has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of the provisions of this subsection or any regulations thereunder, the *Board of Directors may, in its discretion, bring an action* in the United States district court . . ."

*Id*. (emphasis added).

Patterson has not brought the instant suit in the name of the Board of Directors nor has he alleged that he is a member of such board. Fremont Motion at 3-4. Accordingly, Patterson's claim for violation of regulations governing insured deposit institutions is dismissed for failure to state a claim.[*]

---

[*] The complaint contains citations of numerous older cases in an attempt to support a cause of action under 12 U.S.C. § 1828(g)(2). *See* Complaint ¶ 9. However, not one of the citations actually address the statute in question. See, *e.g.*, *First National Bank of Amarillo v. Slaton Independent School District*, 58 S.W.2d 870, 871 (Tex. Civ. App.--Amarillo 1933, writ dism'd) (misuse of trust containing school
(continued...)

b. *Violations of the Truth in Lending Act*

The purpose of the TILA is to protect the consumer from inaccurate and unfair credit practices, and "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." *James v. City Home Service, Inc.*, 712 F.2d 193, 194 (5th Cir. 1983) (quoting 15 U.S.C. § 1601(a)). Thus, the TILA does not require a consumer to "actually have been deceived in order for there to be a violation." *Id*. (quoting *Smith v. Chapman*, 614 F.2d 968, 971 (5th Cir. 1980)).

Patterson alleges that the defendants violated the TILA by "fraudulently concealing the actual methodology by which [they] 'created' the money loaned to Plaintiff . . . ." Complaint ¶ 14. That is, after Patterson executed and delivered his promissory notes to the defendants, the defendants then deposited Patterson's money into their accounts and loaned the money back to him. *Id*.

Fremont maintains that Patterson's TILA claims must be dismissed because that statute provides no private right of action and is administratively enforced by the Office of the Comptroller of the Currency. Fremont Motion at 4. To the contrary, the TILA does provide for a private cause of action. *Tower v. Moss*, 625 F.2d 1161, 1165 (5th Cir. 1980) ("The Truth in Lending Act provides not only for enforcement

---

*(...continued)
funds); *West St. Louis Savings Bank v. Shawnee County Bank*, 95 U.S. 557, 558 (1877) (cashier of bank endorsed notes in his capacity as individual, not as representative of bank).

by the Federal Trade Commission and other federal agencies, but it also establishes a civil cause of action by a consumer against a creditor who fails to make the required disclosures."); see also *McGowan v. King, Inc.*, 569 F.2d 845, 848 (5th Cir. 1978) ("The scheme of the statute is to create a system of private attorneys general to aid its enforcement. . . .").

A one-year statute of limitations governs Patterson's claims under the TILA. *See* 15 U.S.C. § 1640(e). According to the statute, limitations runs from the date each violation occurred. A violation occurs when credit is extended through the consummation of the transaction between creditor and its customer without the required disclosures being made. *Stevens v. Rock Springs National Bank*, 497 F.2d 307, 309-10 (10th Cir. 1974). The loan transaction between Patterson and Fremont was closed on January 31, 2006. Fremont Motion at 1. Limitations thus bars Patterson's TILA claim against Fremont, since suit was not filed until September 18, 2007.

### c. *Violations of the Fair Debt Collection Practices Act*

Patterson alleges that the defendants violated the FDCPA on numerous occasions by using "false, deceptive or misleading representations or means" in their attempts to collect debts allegedly owed to them by Patterson. Complaint ¶ 18. First, Patterson avers that the defendants violated the FDCPA by "[f]alsely representing the character, amount, or legal status of the alleged debt of Plaintiff, or any services rendered or compensation which may be lawfully received by a debt

collector for collection of a debt" in violation of 15 U.S.C. § 1692e(2)(A), (B). *Id*. Second, Patterson asserts that the defendants violated the FDCPA by "[c]ommunicating or threatening to communicate to any person credit information which is known or which should have been known to be false" and "[u]sing false representations or deceptive means to collect a debt or to obtain information concerning a consumer" in violation of 15 U.S.C. § 1692e(10). *Id*.

The FDCPA prohibits a "debt collector" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Under the statute, "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Even if the court assumes *arguendo* that Patterson's allegations are true, Fremont -- as lender -- is not a debt collector as defined by the FDCPA; moreover, the FDCPA does not apply to creditors using their own names to collect debts owed to them. *Sweet v. Wachovia Bank and Trust Co., N.A.*, No. Civ. A. 3:03-CV-1212-R, 2004 WL 1238180, *3 n.1 (N.D. Tex. Feb. 26, 2004) (citing 15 U.S.C. § 1692a(6)(A)); *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp.2d 176, 190 (S.D. Tex. 2007), *aff'd*, 2008 WL 687295 (5th Cir. Mar. 13, 2008). Accordingly, Patterson's FDCPA claim must be dismissed for failure to state a claim.

### d. *Violations of the Fair Credit Reporting Act*

A credit reporting agency which negligently fails to comply with a requirement of the FCRA is liable for any actual damages sustained by a consumer. *Cousin v. Trans Union Corporation*, 246 F.3d 359, 366 (5th Cir.) (citing 15 U.S.C. § 1681o(a)), *cert. denied*, 534 U.S. 951 (2001). Specifically, a negligent violation of either FCRA § 1681e(b) ("§ 1681e(b)") or FCRA § 1681i(a) ("§ 1681i(a)") subjects a credit reporting agency to liability for any actual damages sustained as a result of the violation, costs of court, and reasonable attorney's fees. *Pinner v. Schmidt*, 805 F.2d 1258, 1261-62 (5th Cir. 1986), *cert. denied*, 483 U.S. 1022, and *cert. denied*, 483 U.S. 1032 (1987). A willful violation of § 1681e(b) or § 1681i(a) subjects the credit reporting agency to punitive damages. *Id.* (citing 15 U.S.C. § 1681n).

Patterson claims that the defendants violated that FCRA by "furnish[ing] information relating to [him] to a consumer reporting agency when [defendants] knew or consciously avoided knowing that the information was inaccurate, and when [defendants] had not, clearly and conspicuously specified to [him] an address for mailing notices disputing said information . . ." in violation of "Section 623 (a)(1)(A) of the [FCRA], 15 U.S.C. § 45(a)." Complaint ¶¶ 22, 23.

Under the FCRA, a "consumer reporting agency" is:

> [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on

>consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

Fremont is not a "consumer reporting agency," as that term is defined by the FCRA. Patterson has neither alleged nor offered evidence that Fremont reported any information other than that based solely on its own experiences with him. *See* 15 U.S.C. § 1681a(d)(2)(A). "[W]here the bank is furnishing information based solely on its own experience with the consumer, the information is not a consumer report and the bank is not in those circumstances a consumer reporting agency." *Freeman v. Southern National Bank*, 531 F. Supp. 94, 95 (S.D. Tex. 1982). Accord *Smith v. First National Bank of Atlanta*, 837 F.2d 1575, 1578 (11th Cir.), *cert. denied*, 488 U.S. 821 (1988). For this reason, Patterson has failed to state a claim under 15 U.S.C. §§ 1681e(b) and 1681c upon which relief may be granted.

Though not specifically pleaded, Patterson appears to be pursuing claims under 15 U.S.C. § 1681s-2 ("§ 1681s-2"). Section 1681s-2(a) mandates that "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." *Id*. Under § 1681s-2(a)(1)(B), "[a] person shall not furnish information relating to a consumer to any consumer reporting agency if . . . (i) the person has been notified by the consumer, at the address specified by the person for such

notices, that specific information is inaccurate; and (ii) the information is, in fact, inaccurate." *Id*.

The Fifth Circuit has yet to rule on whether a private cause of action exists under § 1681s-2. See *Young v. Equifax Credit Information Services*, 294 F.3d 631, 639 (5th Cir. 2002). District courts in the Fifth Circuit generally have held that a private right of action does not exist. See, *e.g.*, *Wagner v. BellSouth Telecommunications*, No. 07-604-C, 2008 WL 348784, *3 (M.D. La. Feb. 7, 2008); but see *Carlson v. Trans Union, LLC*, 259 F. Supp.2d 517, 520 (N.D. Tex. 2003). However, even if Patterson has a private right of action, he has not sufficiently pleaded that a consumer reporting agency reported an inaccuracy, and that the furnisher of the information failed to correct it. See *Davis v. Farm Bureau Bank*, FSB, No. SA-07-CA-967-XR, 2008 WL 1924247, *3 (W.D. Tex. April 30, 2008). For this reason, Patterson has failed to state a valid claim under FCRA upon which relief may be granted.

## 2. State Law Claims

Federal court jurisdiction exists over an entire action, including state law claims, when the federal and state law claims "'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 349 (1988) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)). Yet supplemental jurisdiction over state law claims is a "doctrine of

discretion, not of plaintiff's right." *Gibbs*, 383 U.S. at 726. Consequently, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon*, 484 U.S. at 350.

When the federal claims are dismissed before trial and only state law claims remain, the balance of factors to be considered under the supplemental jurisdiction doctrine weigh heavily in favor of declining jurisdiction; therefore, the federal court should usually decline the exercise of jurisdiction over the remaining claim and send that claim to a state court. See *id*. at n.7. According to the Fifth Circuit, "[o]ur general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum Co. v. Dresser Industries*, 972 F.2d 580, 585 (5th Cir. 1992) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)). Here, the federal claims asserted against Fremont have been dismissed and only a state law claims remain.

Because the federal claims are being dismissed before trial, the factors of judicial economy, convenience, fairness, and comity suggest that this court ought to decline jurisdiction over the remaining state law claim against Fremont. *See* 28 U.S.C. § 1367(c)(3). Patterson's state law claims are therefore dismissed without prejudice to him pursuing them in an appropriate state court.

III. CONCLUSION

For the foregoing reasons, Sierra's motion to dismiss for lack of subject matter jurisdiction is **GRANTED**. Patterson's state law claims are **DISMISSED** without prejudice to their being refiled in state court. All other claims against Fremont are **DISMISSED** with prejudice.

**SO ORDERED**.

July 1, 2008.

_____
**A. JOE FISH**
**Senior United States District Judge**